IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

      **Plaintiff,**

           **v.**                     **Civil No.** 21-1463 (FAB)

TRIPLE-S VIDA, INC., *et al.*,

      **Defendants.**

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is plaintiff Equal Employment Opportunity Commission ("EEOC")'s motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). (Docket No. 240.) Defendants Triple-S Vida, Inc. and Triple S Management Corporation (collectively, "Triple-S" or "defendants") also move for summary judgment. (Docket Nos. 242 and 243.)[1] Magistrate Judge Marshal D. Morgan issued a report and recommendation ("R&R") regarding the cross-motions for summary judgment on September 30, 2024. (Docket No. 285.) For the reasons set forth below, the R&R

---

[1] Triple-Vida Inc. and Triple S Management Corporation are joint employers for purposes of this action. See Sanction Order (Docket No. 219 at p. 3 (citing Fed R. Civ. P. 37(b)(2)(i))); see EEOC v. Triple-S Vida, Inc., Case No. 21-1463, 2023 U.S. Dist. LEXIS 27693, at *13-14 (D.P.R. Feb. 17, 2023) (Morgan, Mag. J.) ("The First Circuit has explained that under the 'single employer' or 'integrated employer' doctrine, two nomically separate companies may be so interrelated that they constitute a single employer subject to liability under Title VII and, by analogy the ADA.") (citing Torres-Negrón v. Merck & Co. Inc., 488 F.3d 34 (1st Cir. 2007)). Accordingly, the Court refers to both entities as "Triple-S."

is **REJECTED IN PART** and **ADOPTED IN PART**.  (Docket No. 285.)  The
motion for summary judgment filed by the EEOC is **DENIED IN PART,**
**GRANTED IN PART,** and **HELD IN ABEYANCE IN PART**.  (Docket No. 242.)
Furthermore, the motion for summary judgment filed by Triple-S is
**DENIED IN PART** and **HELD IN ABEYANCE IN PART**.  (Docket No. 243.)

## I.    Background

     This litigation pertains to purported violations of the
Americans with Disabilities Act, 42 U.S.C. sections 12181 *et seq*.
Triple-S hired Ivelisse González ("González") in 2015 as an
authorized representative.  (Docket No. 285 at p. 5.)  This
position required González to sell life insurance, collect
payments, and to "spend a considerable amount of time driving
around to clients (usually over four (4) hours per day)."  Id.;
see Docket No. 41 at p. 5 (Amended Complaint) (González "[drove]
around along planned routes, [visited] several clients a day, [and
sold] insurance policies").

     Dr. Lesliane Castro-Santana ("Castro") diagnosed González
with fibromyalgia in August 2018.  Id. at p. 6.  This condition
"[affects] muscle and soft tissue that causes chronic muscle pain,
tenderness, and fatigue."  Id.  González experienced pain,
swelling, and exhaustion at work.  Id.  In fact, she "often became
dizzy and would need to pull her vehicle over until the dizziness
subsided enough for her to reach her destination."  Id.

### A.    The 2018 Reasonable Accommodation Request

González subsequently provided her supervisor with a letter from Dr. Castro. Id. This letter requested that González "be placed into an office position as a reasonable accommodation." Id. Triple-S human resources consultant Kayra Dávila-Torres ("Dávila") then "asked for a completed medical questionnaire about [. . .] the nature of her reasonable accommodation request." Id. Dr. Castro completed the medical questionnaire on October 11, 2018, informing Triple-S that González required "opportunities for [physical] position changes" and "multiple stops in her car." Id. at p. 7. Consequently, Dr. Castro recommended that Triple-S reassign González to an "office position that does not require her to drive all day long." Id.

According to Triple-S policy, "relocation to a vacant position [may occur] when the [requested] accommodation cannot be made in the position occupied by the employee with disabilities." Id. On October 15, 2018, Triple-S denied González's reassignment request. Id. at p. 8. Dávila informed González that reassignment to an office position was not feasible. Id. Instead, Triple-S provided González with an ergonomic chair and instructed her to "apply to vacancies for which she was qualified." Id.

The following week, González filed a charge of discrimination with the EEOC and the Antidiscrimination Unit of

the Puerto Rico Department of Labor and Human Resources ("ADU").
Id.   The ADU determined that the allegations set forth in
González's charge of discrimination lacked probable cause.  Id.
The EEOC adopted this determination on August 26, 2021.  Id. at
p. 9.  Both agencies informed González of her right to sue Triple-S
within the applicable 90-day timeframe.  Id. at. p. 9.  She did
not.

**B.  González Continued to Work as an Authorized Representative While She Applied to Various Jobs at Triple-S**

Between 2018 and 2020, González applied to at least nine
office positions within the Triple-S network.  Id. at p. 10; see
Docket No. 219 at p. 3 (Sanction Order) ("The Court **ORDERS** that
defendants TSV and TSM are precluded from arguing, stating or
inferring that [González] did not apply to the nine (9) positions
referenced in the discovery requests").  She also possessed the
requisite qualifications for these positions.  Id. (holding that
the defendants are precluded from arguing that González "was not
qualified for any of [these] nine (9) positions").  Triple-S
rejected all nine applications.  In the interim, González continued
to work as an authorized representative.

González and Alimaris Hernández-Castro ("Hernández")
both applied for a customer service position at Triple-S Vida Inc.
in July 2020.  Id. at p. 11.  During her interview, González

informed two Triple-S supervisors that she "sought the position as a reasonable accommodation for her fibromyalgia."  Id.  González reiterated this request to Triple-S via email on August 4, 2020. Id.  Triple-S ultimately hired Hernández for the position, alleging that she was more qualified than González and had "extensive experience on how to run the organization."  Id.  The EEOC alleges that "between 2018 and 2021, there were at least thirty-three (33) positions bearing the title Customer Service Representative (Debit and otherwise), General Office Clerk, Administrative Support Clerk, and Investigation Officer that [González] likely qualified for and could have been transferred into as a reasonable accommodation."  (Docket No. 240 at p. 23.)

     **C.    The 2020 Charge of Discrimination**

       After Triple-S rejected González for the customer service position, she filed a second charge of discrimination. (Docket No. 285 at p. 11.)  On June 14, 2021, the EEOC found that probable cause supported González's allegations of disability discrimination.  Id. at p. 12.  Consequently, the EEOC sent Triple-S a "Letter of Discrimination" to initiate the conciliation process.  Id.

   **D.**   **Triple-S Provided González with a Reasonable Accommodation**

Triple-S avers that González again applied for a customer service position on May 31, 2021. Id. The EEOC disputes this allegation. Id. Both parties agree, however, that Triple-S offered this job to González ten "days after the EEOC had issued its Letter of Discrimination." Id. González accepted the offer on July 9, 2021, which included a higher base salary. Id. at p. 13.[2] The EEOC acknowledges that the 2021 reassignment qualified as a reasonable accommodation for González. See EEOC Statement of Uncontested Facts (Docket No. 240 at p. 27) ("In July 2021, [González] was placed into an office position as a reasonable accommodation without needing to compete for the position."). In sum, González continued to perform the duties associated with an authorized representative (*i.e.* driving and collecting insurance payments from clients) for more than two years after Dr. Castro completed the medical questionnaire in 2018.

   **E.**   **Federal Litigation**

The EEOC commenced this action on September 23, 2021, two months after Triple-S reassigned González to an office position. (Docket No. 1.) The amended complaint avers that Triple-S "failed to provide a reasonable accommodation to

---

[2] González maintains, however, that she "accepted a major pay reduction." (Docket No. 242 at p. 9.)

Civil No. 21-1463 (FAB)                                          7

[González] in violation of the ADA."   (Docket No. 40 at p. 1.)
The EEOC seeks a permanent injunction enjoining Triple-S from
"failing to reasonably accommodate the known disabilities of an
employee," and pecuniary damages on behalf of González.   Id. at
p. 9.

     The parties engaged in prolonged settlement
negotiations.  (Docket No. 17.)  In fact, Magistrate Judge Morgan
held a settlement conference on August 18, 2022.  (Docket No. 54.)
These efforts were fruitless.   Id.  ("The Court laments the time
expended discussing settlement with the parties only to be told
after close to three hours that it turned out to be a wasted effort
as the defendants have no interest in participating.").  The Court
subsequently denied the defendants' pending motion to dismiss.
EEOC v. Triple-S Vida, Inc., Case No. 21-1463, 2023 U.S. LEXIS
27693 (D.P.R. Feb. 17, 2023) (Morgan, Mag. J.) (recommending denial
of the motion to dismiss); Docket No. 84 (Order Adopting the R&R).

     The EEOC and Triple-S filed cross motions for summary
judgment on November 13, 2023.   (Docket Nos. 242 and 243.)
Magistrate Judge Morgan issued the appurtenant R&R after extensive
briefing by the parties and a second settlement conference.  See
Docket No. 285 (R&R); Docket Nos. 254, 262, 270, 273, 276 and 277
(responses in opposition to summary judgment, replies, and sur-
replies); Docket No. 263 (Minute Entry of Settlement Conference)

("After spending more than 6.5 hours negotiating with the parties, the Court determined that settlement was not to be had today."). The R&R recommends that the Court deny both motions for summary judgment.  (Docket No. 285.)  The EEOC and Triple-S each filed objections to the R&R.  (Docket Nos. 288 and 290.)  The parties also opposed each other's objections.  (Docket Nos. 293 and 295.)

## II.  Report And Recommendation Standard of Review

A district court may refer a pending motion to a magistrate judge for a report and recommendation.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(a); Loc. Rule 72(b).  Any party adversely affected by the R&R may file written objections within fourteen days of being served with the magistrate judge's report. Loc. Rule 72(d); see 28 U.S.C. § 636(b)(1).  A party that files a timely objection is entitled to a de novo determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made."  Ramos-Echevarría v. Pichis, Inc., 698 F. Supp. 2d 262, 264 (D.P.R. 2010); Sylva v. Culebra Dive Shop, 389 F. Supp. 2d 189, 191-92 (D.P.R. 2005) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)).

Failure to comply with this rule precludes further review. See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Borden v. Sec'y of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987).  In conducting its review, a court is free to "accept, reject, or modify, in whole

or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(a)(b)(1); <u>Templeman v. Chris Craft Corp.</u>, 770 F.2d 245, 247 (1st Cir. 1985); <u>Álamo Rodríguez v. Pfizer Pharmaceuticals, Inc.</u>, 286 F. Supp.2d 144, 146 (D.P.R. 2003). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object. <u>See Hernández-Mejías v. General Elec.</u>, 428 F.S upp.2d 4, 6 (D.P.R. 2005) (citing <u>Lacedra v. Donald W. Wyatt Detention Facility</u>, 334 F. Supp. 2d 114, 125-126 (D.R.I. 2004)).

## III. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." <u>Dunn v. Trs. of Bos. Univ.</u>, 761 F.3d 63, 68 (1st Cir. 2014) (internal citation omitted). Summary judgment is not the appropriate vehicle to "decide factual disputes over what happened" or to "draw factual inferences from the evidence presented." <u>N.S. v. Kan. City. Bd. of Police Comm'rs</u>, 142 S. Ct. 2422 (2023).

The purpose of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Tobin v. Fed. Exp. Corp., 775 F.3d 448, 450 (1st Cir. 2014) (internal citation omitted). The party moving for summary judgment has the initial burden of "[demonstrating] the absence of a genuine issue of material fact" with definite and competent evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). The movant must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion. Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

Once a properly supported motion has been presented, the burden shifts to the nonmovant "to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial Puerto Rico Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted). "When the nonmovant bears the burden of proof on a particular issue, [he or] she [or it] can thwart summary judgment only by identifying competent evidence in the record sufficient to create a jury question." Tobin, 775 F.3d at 450-51. A court draws all reasonable inferences from the record in the light most favorable to the nonmovant, but it disregards

unsupported and conclusory allegations.  McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014).

When parties file cross-motions for summary judgment, a court must "consider each motion separately, drawing all inferences in favor of each non-moving party in turn."  AJC Int'l, Inc. v. Triple-S Propiedad, 790 F.3d 1, 3 (1st Cir. 2015) (quoting D & H Therapy Assocs., LLC v. Bos. Mut. Life Ins. Co., 640 F.3d 27, 34 (1st Cir. 2011)).  "Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply 'require [the Court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed.'"  Wells Real Estate Inv. Tr. II, Inc. v. Chardón/Hato Rey P'ship, 615 F.3d 45, 51 (1st Cir. 2010) (quoting Adria Int'l Grp., Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001)).

## IV. Reasonable Accommodation Pursuant to the Americans with Disabilities Act

Congress enacted the ADA to ensure that individuals with physical or mental disabilities have a legal recourse to redress discrimination in critical areas, such as employment, because having a disability "in no way [diminishes] a person's right to fully participate in all aspects of society."  See 42 U.S.C. § 12101(a).  The statute provides that "[no] covered entity shall discriminate against a qualified individual on the basis of

Civil No. 21-1463 (FAB)                                              12

disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Id. § 12112(a).[3] A "qualified individual" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 1211(8).

Failure to provide reasonable accommodations may, in certain circumstances, constitute a violation of the ADA. For instance, the statute mandates that employers make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] demonstrates that the accommodation would impose an undue hardship on [its] operation of the business." 42 U.S.C. § 12112(b)(5)(A); see Rocafort v. IBM Corp., 334 F.3d 115, 119 (1st Cir. 2003) ("Under the ADA, an employer who knows of a disability yet fails to make reasonable accommodations violates the statute.") (citation and quotation omitted). The ADA does not, however, entitle an employee 'to the accommodation of his choice, so long as the accommodation he receives is reasonable." Fink v. New York City of Personnel, 53

---

[3] Triple-S is a "covered entity" because there is no dispute that the defendants are employers of fifteen or more employees. See 42 U.S.C. § 12111(2), (5) (defining "covered entity").

Civil No. 21-1463 (FAB)                                                    13

F.3d 565, 567 (2d Cir. 1995); see Rood v. Town of Fort Myers Beach, 622 F. Supp.3d 1217, 1231-32 (M.D. Fla. 2022) ("ADA plaintiffs are not entitled to their most-preferred accommodations, just those that are reasonable."). Courts and juries have attempted to decipher the meaning of "reasonable accommodation" for decades. Indeed, the reasonable accommodation provision is "perhaps the most litigated component of the ADA." P.J Murray and Terrence Lewis, The Americans with Disabilities Act and Reasonable Accommodation: Are Employers Required to Reassign Disabled Individuals Who Can No Longer Perform Their Jobs?, 15 THE LABOR LAW 1, 3 (1999).

    To prevail on a failure-to-accommodate claim, the EEOC must establish: (1) that González had a disability as defined by the ADA; (2) that she was able to perform the essential functions of her job with or without a reasonable accommodation; and (3) that Triple-S, despite knowing of her disability, did not offer a reasonable accommodation.[4]  Stratton v. Bentley Univ., 113 F.4th

---

[4] The McDonnell Douglas burden-shifting framework does not apply to failure to accommodate claims.  See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 263-64 (1st Cir. 1999).

25, 52 (1st Cir. 2024).[5]    To demonstrate that the requested accommodation is reasonable, the plaintiff must show that it "would enable [her] to perform the essential functions of [her] job" and would be "feasible for the employer under the circumstances." Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 91 (1st Cir. 2012) (citation and quotation omitted); Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 23 (1st Cir. 2004) (quotation omitted) ("To show that a proposed accommodation was reasonable, a plaintiff must prove not only that the proposed accommodation would enable her to perform the essential functions of her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances.")

    If the EEOC succeeds in establishing a *prima facie* case of discrimination, Triple-S must then "articulate a legitimate, non-discriminatory reason for its employment decision and to produce credible evidence to show that the reason advanced was the real reason." Ellis v. North Andover Pub. Sch., 569 F Supp. 3d 61, 65-

---

[5] The R&R provides that "there are relevant questions of fact as to whether the defendants offered Ms. González **a reasonable accommodation** after she formally made her first request for a transfer to an office position." (Docket No. 285 at p. 24) (emphasis added).  The EEOC asserts that this proposition "is not a correct statement of the law." (Docket No. 288 at p. 3.)  The EEOC misconstrues the R&R, interpreting this phrase to "[suggest] that an employer may provide just any accommodation to comply with the ADA – regardless of whether it actually addresses a disability or not." Id.  This is simply not what the R&R states. According to Lexis, courts in the First Circuit have referred to "a reasonable accommodation" in 1,197 cases.  It defies logic to conclude without more that "a reasonable accommodation" is synonymous with "just any accommodation."

Civil No. 21-1463 (FAB)                                              15

66 (D. Mass. 2021) (citing Freadman v. Metro. Prop. & Gas. Ins.
Co., 484 F.3d 91, 104 (1st Cir. 2007)).  If Triple-S does so, the
burden of proof returns to the EEOC to submit evidence that the
proffered rationale is mere pretext.  Id.

     An employee's request for a reasonable accommodation
"sometimes creates a duty on part of the employer to engage in an
interactive process." EEOC v. Kohl's Dep't Stores, Inc., 774 F.3d
127, 132 (1st Cir. 2014) (internal and quotation omitted).  This
process requires "both the employer and the employee to engage in
a meaningful dialogue, in good faith, for the purpose of discussing
alternative reasonable accommodation."  Id.

     **A.   Reassignment**

          The ADA provides that a "reasonable accommodation" may
include "reassignment to a vacant position."  42 U.S.C. §
12111(9)(B).  Failure-to-reassign claims are nuanced and differ
from other causes of action arising from requests for reasonable
accommodations.  Audette v. Town of Plymouth, 858 F.3d 13, 20-21
(1st Cir. 2017) ("[The] burden for the employee at the second step
of the inquiry changes slightly when an employee becomes disabled,
can no longer perform the essential functions of her job, and
requests as an accommodation a transfer or complete reassignment
of duties.").

González requested reassignment to an office position because her fibromyalgia diagnosis prevented her from performing the essential functions of an authorized representative (*i.e.* driving for approximately four hours a day). (Docket No.285 at p. 7.) Accordingly, the EEOC shoulders the burden of establishing: (1) that González is disabled within the meaning of the ADA; (2) that González "can perform the essential functions of the position she desires;" (3) that "there is an actual vacant position to which she can transfer;" and (4) that Triple-S knew of González's disability but failed to reassign her. Id.; Moore v. NSTAR Electric & Gas Co., 320 F. Supp. 3d 261, 267 (D. Mass. 2018) ("Under Title I of the ADA, a person who is not able to perform his or her original position may nonetheless be entitled to accommodation in the form of reassignment to a vacant position for which the employee is qualified.").

Triple-S need not create a new job for González or reestablish a position that no longer exists. Phelps v. Optima Health, Inc., 251 F.3d 21, 27 (2001). Requests for reassignment are not categorial imperatives, binding on employers in every case. For example, employers have no duty to reassign an employee if doing so violates the "provisions of a collective bargaining agreement or the rights of other employees seeking such reassignment." Feliciano v. Rhode Island, 160 F.3d 780, 787 (1st

Cir. 1998) (citing Kralik v. Durbin, 180 F.3d 76, 79 (3d Cir. 1997)
(dismissing an ADA cause of action because the Court "found that
[the plaintiff's] requested accommodation would infringe upon the
legitimate seniority rights of other employees established in the
collective bargaining agreement"); see U.S. Airways, Inc. v.
Barnett, 535 U.S. 391, 403 (2002) ("[It] would not be reasonable
in the run of cases that the assignment in question trump the rules
of a seniority system.  To the contrary, it would ordinarily be
unreasonable for the assignment to prevail.").

**V.   Discussion**

The factual posture of this litigation is atypical.  The EEOC
commenced this action after González received precisely what she
requested:  reassignment to an office position.  Relevant case law
generally stems from an employer's refusal to reassign an employee,
resulting in a civil suit because the employee did **not** receive a
reasonable accommodation.  See e.g., Id. (a police department
denied an officer's request for reassignment to a data-entry
position); Barnett, 535 U.S. at 394 (employer refused to reassign
an employee to a "less physically demanding mailroom position");
Feliciano, 160 F.3d at 782 (holding that the employee failed to
establish the existence of vacant positions for which she was
qualified after her employer denied the reasonable accommodation
request); Lang v. Wal-Mart Stores East, L.P., 813 F.3d 447, 456

(1st Cir. 2016) (holding that the employee "offered no evidence that there were any vacancies when she asked for an accommodation" after employer terminated her without offering a reassignment; Scalone-Finton v. Falmouth Pub. Sch., Case No. 21-11792, 2024 U.S. Dist. LEXIS 175553, at *56 (D. Mass. Sept. 27, 2024) (same); Oquendo v. Costco Wholesale Corp., Case No. 17-2238, 2020 U.S. Dist. LEXIS 62280, at *36 (D.P.R. Apr. 7, 2020) (Morgan, Mag. J.) (recommending dismissal of an employee's accommodation claim after employer denied a request for reassignment); Gailey v. Elec. Boat Corp., Case No. 21-201, 2023 Dist. LEXIS 167174, at *21 (D.R.I. Sept. 20, 2023) (employee asserted an unsuccessful ADA cause of action after his employer denied request for reassignment).

Indeed, courts have dismissed failure-to-accommodate causes of action as moot once an employee receives the requested accommodation. See Campbell v. Lamar Inst. of Tech., Case No. 14-399, 2015 U.S. Dist. LEXIS 194447, at *13 (E.D. Tex. Aug. 13, 2015) ("Mr. Campbell also seeks compensatory damages under the ADA . . . based on LIT's exclusion and failure to accommodate him. But any injury based on exclusion or failure to accommodate is moot because LIT eliminated the controversy by granting his requested accommodation twenty-seven days after the initial denial and nine months before Mr. Campbell filed suit."); Bilyeu v. Ut-Battelle, Case No. 21-352, 2024 U.S. Dist. LEXIS 81539, at *15 (E.D. Tenn.

Mar. 22, 2024) (dismissing a Title VII case because "[once] Ms. Bilyeu received the medical accommodation, her failure to accommodate claim became moot."); Richardson v. Powell, Case No. 14-1673, 2019 U.S. Dist. LEXIS 46566, at *27-28 (D.D.C. Mar. 21, 2019) ("Here, Mr. Richardson received the accommodation that he requested: time off for instances of asthma-related disability. Accordingly, no claim is left to bring."). Accordingly, the uncontested facts foreclose a conventional failure-to-accommodate cause of action.

## A.  Unreasonable Delay: Constructive Denial of an Accommodation Request

The fact that Triple-S ultimately reassigned González to an office position does not defeat an alternative theory of liability – the only surviving cause of action in this litigation.[6] Unreasonable delay may constitute constructive denial of an accommodation request. See García-Hicks v. Voc. Rehab. Admin, 148 F. Supp. 3d 157, 162 (D.P.R. 2015) (Besosa, J.) ("An unreasonable delay in providing accommodations may also qualify as discriminating against a qualified individual on the basis of disability.") (citation omitted). Accordingly, this litigation centers on the nearly three-year delay between González's request

---

[6] The EEOC does not invoke Puerto Rico Law No. 44, P.R. Laws Ann. tit. 1, §§ 501 et seq., an analogue to the ADA. (Docket No. 40.) The amended complaint rests exclusively on the ADA and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a (damages). Id.

for reasonable accommodation and her reassignment to an office position. See Calero-Cerezo v. United States DOJ, 355 F.3d 6, 25 (1st Cir. 2004) (holding that the district court erred in granting the employer's summary judgment motion because the "factfinder might well conclude that, in the face of plaintiff's increasingly desperate requests for an accommodation, the defendants simply stonewalled"); Finely v. Huss, 102 F.4th 789, 821 (6th Cir. 2024) ("[The plaintiff's] problem . . . is that the deputy wardens did provide his requested accommodation – albeit after a delay . . . The issue, then, is the extent to which the delay in placing him in the treatment program is actionable as a failure to accommodate.") (emphasis in original); Logan v. Matveevski, 57 F. Supp. 3d 234, 266 (S.D.N.Y. 2014) (holding that the defendants "may have first constructively denied [the plaintiff's] request for a reasonable accommodation through delay before ultimately granting it."); Saunders v. Queensborough Cmty. Coll., Case No. 13-5617, 2015 U.S. Dist. LEXIS 128608, at *18-19 (E.D.N.Y. Sept. 24, 2015) ("Plaintiff admits that Defendants provided all three accommodations that she requested . . . The Court accordingly construes Plaintiff's reasonable accommodation claim to be based on the seven-month delay in providing her accommodations.").

        To determine whether delay is reasonable, courts assess "the totality of the circumstances, including, but not limited to,

such factors as the employer's good faith in attempting to accommodate the disability, the length of the delay, the reasons for the delay, the nature, complexity, and burden of the accommodation requested, and whether the employer offered alternative accommodations." McCray, v. Wilkie, 966 F.3d 616, 621 (7th Cir. 2020) (citations omitted); see Olson v. Chao, Case No. 17-10970, 2019 U.S. Dist. LEXIS 167937, at *52 (D. Mass Sept. 30, 2019) (same).    EEOC guidance regarding reasonable accommodation suggests that the interactive process "should proceed as quickly as possible."  U.S. Equal Opportunity Comm'n, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, No. 915.002, 2002 WL 31994335, at *10 (2002).    According to EEOC guidance, relevant factors to determine whether delay is reasonable include:

> (1) The reason(s)for the delay, (2) the length of the delay, and (3) how much the individual with a disability and the employer each contributed to the delay, (4) what the employer was doing during the delay, and (5) whether the required accommodation was simple or complex to provide.

Id. (citing Hankins v. The Gap, Inc., 84 F.3d 797, 801 (6th Cir. 1996)).[7]

          The Court is unaware of, and the parties do not cite, an ADA case in which the plaintiff pursued a failure-to-reassign claim on an unreasonable-delay theory of liability.    Precedent identified by this Court concerning allegations of unreasonable delay arise from the failure to provide accommodations other than reassignment, such as a flexible work schedule or an ergonomic chair.  See Valle-Arce v. P.R. Ports Authority, 651 F.3d 190, 194 (1st Cir. 2011) (requesting a later start time); Gloria-Hicks, 148 F. Supp. 3d at 160 (requesting an ergonomic chair); Ellis, 569 F. Supp. 3d at 63 (requesting "access to large print materials, good lightening and writing or reading guides"); Nieves v. Popular, Inc., Case No. 12-1266, 2013 U.S. Dist. LEXIS 166717, at *14 (D.P.R. Nov. 21, 2013) (Fusté, J.) (requesting inter alia "a new ergonomic desk chair and accompanying footrest").  Based on the Court's research, this variation of disability discrimination is a case of first impression in this jurisdiction.

---

[7] The EEOC faults Magistrate Judge Morgan for "considering other accommodations that are not transfers as a reasonable accommodation because the ADA requires transfer to a vacant position for which the employee is qualified." (Docket No. 288 at p. 4.)  This objection contradicts EEOC policy, which specifically states that "what the employer was doing during the delay" is a relevant factor. U.S. Equal Opportunity Comm'n, Enforcement Guidance:  Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, No. 915.002, 2002 WL 31994335, at *10 (2002).

Civil No. 21-1463 (FAB)                                          23

        Because the elements of a failure-to-reassign case
differ slightly from other accommodation causes of action, <u>see</u>
<u>Audette</u>, 858 F.3d 13, the case law cited above is not entirely
applicable.  Here, the Court must reconcile an unreasonable-delay
theory of liability with the elements of a failure-to-reassign
claim.  To accomplish this endeavor, the Court relies predominately
on <u>Audette</u>, 858 F.3d 13 (reassignment), and <u>Valle-Arce,</u> 651 F.3d
190 (unreasonable delay).  The standard set forth in <u>Audette</u>
continues to govern the Court's analysis, but with a modification
to the fourth element to incorporate the unreasonable-delay theory
of liability.  Accordingly, to prevail the EEOC must prove that:
(1) González is disabled within the meaning of the ADA;
(2) González "can perform the essential functions of the position
she desires;" (3) "there is an actual vacant position to which she
can transfer;" and (4) Triple-S knew of her disability, yet failed
to reasonably accommodate her by delaying the requested
reassignment.

        The R&R recommends that the Court deny the cross-motions
for summary judgment <i>in toto</i>.  (Docket No. 285 at p. 30.)  A
blanket denial is overly inclusive, however, because the EEOC
demonstrated that no genuine issues of material fact exist
regarding the first element of the surviving ADA cause of action.
<u>See</u> Fed. R. Civ. P.56(a) (A Court may grant summary judgment on

Civil No. 21-1463 (FAB)                                                   24

"each claim or defense" or "part of each claim or defense").
Summary judgment regarding the remaining elements of the failure-
to-reassign cause of action is either unwarranted or premature.

> 1.    **Element One: González is Disabled within the Meaning of the ADA**

Magistrate Judge Morgan held that "the EEOC has met
its burden of demonstrating the first prong of the relevant
inquiry, that Ms. González is disabled, as defined by the ADA."
(Docket No. 285 at p. 19.)  Triple-S does not dispute this fact.
(Docket No. 290.)  Consequently, as to the first element, the Court
**REJECTS** the R&R, **GRANTS** the EEOC's summary judgment, and **DENIES**
the summary judgment motion filed by Triple-S.  (Docket Nos. 242,
243 and 285.)

> 2.    **Elements Two and Three: Ability to Perform the Essential Functions of the Desired Position and the Existence of Vacant Positions**

The R&R states that the "EEOC has in effect
successfully established that Ms. González could perform the
essential duties of the nine (9) vacant positions to which she
applied to during the relevant period." (Docket No. 285 at p. 21.)
Magistrate Judge Morgan also held that "the record evidence is
undisputed that vacant positions existed for which Ms. González
could have been transferred to within the Triple-S Group." Id. at

p. 21.  Pursuant to the October 16, 2023 Sanction Order, Triple-S shall not:

> [argue, state, or infer] that claimant Ivelisse González did not apply to the nine (9) positions referred [to] in the discovery requests [and] that the nine (9) positions referenced in the discovery requests were not vacant; or that claimant González was not qualified for any of the nine (9) positions referenced in the discovery requests.

(Docket No. 219 at p. 3.)  The summary judgment motions regarding the second and third elements of the failure-to-reassign cause of action are not, however, ripe for disposition.

The denial of an employee's reasonable accommodation request constitutes "a discrete discriminatory act triggering the statutory limitations period." Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 129 (1st Cir. 2009) (citation omitted).  González submitted her first request for a reasonable accommodation in August 2018. (Docket No. 285 at p. 7.)  A sequence of significant events followed, including: (1) the denial of González's accommodation request on October 15, 2018; (2) González filing a charge of discrimination on October 23, 2018 with the ADU and EEOC; (3) González's application for office positions between 2018 and 2020, but Triple-S repeatedly rejecting her; (4) The ADU finding "no probable cause" on the 2018 charge of discrimination and providing González with a right-to-sue letter in July 2020;

(5) González filing a second charge of discrimination with the EEOC on September 25, 2020; (6) the EEOC issuing a finding of probable cause on the 2020 charge of discrimination and sending Triple-S a "letter of determination" on June 14, 2021; (7) Triple-S offering González an office position on June 24, 2021; and (8) the EEOC "adopt[ing] the findings" of the ADU regarding the 2018 charge of discrimination, and also providing González with a right-to-sue letter on August 26, 2021, after Triple-S provided a reasonable accommodation. (Docket No. 285 at pp. 7-14.) The Court notes that the 2018 and 2020 charges of discrimination were simultaneously before the EEOC for nearly a year and resulted in divergent outcomes. In fact, the EEOC received the 2020 charge, conducted an investigation, and mailed Triple-S a letter of determination two months before the agency provided González with a right-to-sue letter for the 2018 charge.

In Puerto Rico, employees are required to file a complaint with the EEOC or ADU within 300 days of the alleged discrimination. See 42 U.S.C. § 2000e *et seq.*; Bonilla, 194 F.3d at 278 n.4 (internal citations omitted); Cintrón-García v. Supermercados Econo, Inc., 818 F. Supp. 2d 500, 506-507 (D.P.R.

2011) (Gelpí, J.) (internal citations omitted).[8] The employee must then file suit within 90 days of receiving a right-to-sue letter from the EEOC. Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005). This 90-day limitations period begins when the charging party receives notice that the EEOC has terminated its administrative processing of the charge and has decided not to sue. Cintrón-García, 818 F. Supp. 2d at 507.

In AMTRAK v. Morgan, the Supreme Court "consider[ed] whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside [the 300-day] statutory period." 536 U.S. at 105.[9] The Morgan court held that:

---

[8] "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States the charge must be filed within 180 days." AMTRAK v. Morgan, 536 U.S. 101, 109 (2002).

[9] The First Circuit Court of Appeals has held that the ADA "mandates compliance with the administrative procedures specified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and that, absent special circumstances . . . such compliance must occur before a federal court may entertain a suit that seeks recovery for an alleged violation of Title I of the ADA." Bonilla v. Muebles J.J. Álvarez, Inc., 194 F.3d 275, 277 (1st Cir. 1999). Thus, failure to exhaust administrative remedies, if unexcused, "bars the courthouse door, as courts long have recognized that Title VII's charge-filing requirement is a prerequisite to the commencement of suit." Id. at 278 (internal citations omitted).

> [Discrete] discriminatory acts are not
> actionable if time barred, even if they are
> related to acts alleged in timely filed
> charges. Each discriminatory act starts a new
> clock for filing charges alleging that act.
> The charge, therefore, must be filed within
> [300 days] after the discrete discriminatory
> act occurred. The existence of past acts and
> the employer's prior knowledge of their
> occurrence, however, does not bar employees
> from filing charges about related discrete
> acts so long as the acts are independently
> discriminatory and charges addressing those
> acts are themselves timely filed.

Id. at 113. Triple-S raised a statute of limitations defense in
its answer to the amended complaint. (Docket No. 43 at p. 13.)
(alleging that "[all] claims set forth in the Complaint are time-
barred)." It subsequently invoked this affirmative defense in the
motion for summary judgment and objection to the R&R, contending
that "all job positions Ms. González applied to between October 23,
2018, and November 20, 2019, are barred by the statute of
limitations because an administrative filing date only allows the
Plaintiff to reach back to 300 days." (Docket No. 243 at p. 9;
Docket No. 290 at p. 6.)

The First Circuit Court of Appeals has held that
the "scope of the civil complaint is . . . limited by the charge
filed with the EEOC and the investigation which can reasonably be
expected to grow out of that charge." Thornton v. UPS, Inc., 587
F.3d 27, 31 (1st Cir. 2009) (citation omitted). Accordingly, the

statute of limitations may alter the factual parameters of this action.  For instance, the EEOC avers that Triple-S rejected González for at least nine office positions from 2018 to 2020. (Docket No. 242 at pp. 4-5.)  A jury might conclude that these repeated rejections only served to delay a reasonable accommodation.  If the failure-to reassign cause of action is restricted by the 300-day limitations period, however, certain acts by Triple-S (*i.e.* rejecting González's applications prior to November 2019) may be irrelevant.  In turn, the evidence in support of a reasonable delay theory of liability may not be as egregious.

The R&R does not address the statute of limitations defense.  (Docket No. 285.)  Consequently, summary judgment regarding the second and third elements of the failure-to-reassign cause of action is premature.  Accordingly, the R&R is **REJECTED** to the extent that the Court cannot deny summary judgment on the second and third elements without additional briefing on the statute of limitations issue.  The cross-motions for summary judgment regarding these elements are **HELD IN ABEYANCE.**  (Docket Nos. 242 and 243.)  The parties may simultaneously file briefs pertaining to the relevant statute of limitations and the implications of simultaneous charges of discrimination before the EEOC **no later than January 10, 2025.**  No responses will be allowed.

> ### 3. Element Four: Knowledge of Disability and Unreasonable Delay

The R&R posits that "no reasonable jury could reasonably find that the defendants did not know of Ms. González's disability." (Docket No. 285 at p. 24.)  Triple-S admits that in 2018, "Ms. González notified [Triple-S Vida] management that she had been diagnosed with fibromyalgia and requested a reasonable accommodation."  (Docket No. 262, Ex. 1 at pp. 14-15.) Accordingly, the Court **GRANTS** the EEOC's summary judgment motion regarding the notice requirement.  (Docket No. 242.)  Accordingly, the recommendation that the Court deny summary judgment as to this determination is **REJECTED.**  (Docket No. 285.)  The summary judgment motion filed by the Triple-S concerning employer notice is **DENIED.** (Docket No. 243.)

Magistrate Judge Morgan also held that "triable issues of fact [exist] as to whether the defendant waited an unreasonable amount of time to ultimately accommodate Ms. González's disability in June 2021." Id. at p. 23.  The First Circuit Court of Appeal's decision in Valle-Arce, 651 F.3d 190-193, is informative.  In Valle-Arce, this Court dismissed a failure-to-accommodate claim on the eighth day of trial.  Valle-Arce v. P.R. Ports Authority, Case No. 07-2071 (Judgment) (D.P.R. Nov. 30, 2009) (Besosa, J.).  A human resources employee at the

Puerto Rico Ports Authority had alleged that her employer failed
to provide reasonable accommodation by refusing to modify her work
schedule. Valle-Arce, 651 F.3d at 196. Because "attendance is an
essential function of any job, an employee who does not come to
work cannot perform any function." (Case No. 07-2071, Docket
No. 134 at p. 36) (citing Ríos-Jiménez v. Principi, 520 F.3d 31
(1st Cir. 2008)). Consequently, the Court held that the employee
was "not a qualified individual." Id.

        The First Circuit Court of Appeals reversed this
disposition, holding that the ADA cause of action survived in part
because "unreasonable delay may amount to a failure to provide
reasonable accommodations." Valle-Arce, 651 F.3d at 200-01. It
emphasized that "[five] months passed with the [Ports Authority]
taking no action on [the employee's] request for reasonable
accommodation." Id. at 196. The employee then "filed charges
with the [EEOC]," asserting a disability discrimination claim.
Id. "The very next day, with no additional medical examination or
administrative procedure, the [Ports Authority] partially granted
her accommodation request." Id. Also, the Ports Authority
deviated from its preexisting policy regarding the ADA and
reasonable accommodation. Id. Ultimately, the Valle-Arce court
held that the employee "was entitled to present to a jury the

Civil No. 21-1463 (FAB)                                          32

question of whether the [Ports Authority] failed to grant [the employee's request for] a reasonable accommodation." Id. at 201.[10]

Similar to the Ports Authority in Valle-Arce, Triple-S only granted González's accommodation request after the EEOC disclosed its probable cause determination. This temporal proximity suggests reticence in providing a reasonable accommodation and diminishes ostensible reasons for delay. What prevented Triple-S from offering a reasonable accommodation before the EEOC intervened? Furthermore, Triple-S policy permitted González's supervisors to offer "relocation to a vacant position when the accommodation cannot be made in the position occupied by the employee with disabilities." (Docket No. 285 at p. 8.) A jury may conclude that a deviation from applicable policies is innocuous, or it may conclude that it constitutes evidence of disability discrimination.

---

[10] The Ports Authority and human resources employee proceeded to trial before Magistrate Judge Bruce J. McGiverin. (Case No. 07-2071, Docket No. 200). Magistrate Judge McGiverin instructed the jury that:

> An employee must make a request for accommodation that is direct and specific enough to put the employer on notice of her request for the need of that accommodation. However, Ms. Valle does not need to prove that the Ports Authority denied her request in order to meet this element. For instance, an employer's unreasonable delay in deciding to grant an accommodation may amount to a failure to accommodate. Or, if an employer fails to engage the employee's request with a good-faith informal back-an-forth process that could have identified a reasonable accommodation, then that can also amount to a failure to accommodate.

Id. Docket No. 214 at p. 10. The jury found in favor of the Ports Authority on the ADA cause of action. (Docket No. 227 at p. 1.)

Civil No. 21-1463 (FAB)                                                    33

　　　　　The EEOC contends that "no reasonable jury could conclude that Defendants could not have accommodated Ms. González in one of the nine positions prior to 2021." (Docket No. 288 at p. 5.) Magistrate Judge Morgan held, however, that:

> The record shows a perceived three-year delay in reassigning Ms. González to an office position as a reasonable accommodation and the defendants' attempts to justify such delay require a credibility determination the Court cannot make. Overall, there is evidence on this record upon which a trier of fact might find that the passage of time in this case resulted in an undue, unjustified, and poorly explained delay in accommodating Ms. González. Given that the record contains evidence that, if believed by the factfinder, might prove that the defendants failed to reasonably accommodate Ms. González's disability, neither party is entitled to prove that the defendants failed to reasonably accommodate Ms. González's disability, neither party is entitled to summary judgment on their claims.

(Docket No. 285 at p. 29.) The Court concurs with this determination.

　　　　　González repeatedly applied for office positions at Triple-S for nearly three years without success. Triple-S argues that González "was not the most qualified applicant for the positions she applied for." (Docket No. 243 at p. 19.) The record is replete with allegations pertaining to the various positions for which González applied (*e.g.* an administrative support clerk position required proficiency in reading and writing in English),

her qualifications, and the qualifications of her competition.
(Docket No. 240) (EEOC Statement of Uncontested Facts).  Whether
it was reasonable to reject González for these positions for nearly
three years requires a credibility determination and assessment of
the evidence.  If Triple-S policy mandates that the best qualified
candidate receive an offer of employment, why did the company
ultimately offer González a position to which she may not have
applied?

        This Court "may neither evaluate the credibility of
witnesses nor weigh the evidence." Hicks v. Johnson, 755 F.3d
738, 743 (1st Cir. 2014) (citation omitted).  Because questions
regarding the reasonableness of a party's actions often require
the trier of fact to weigh the evidence, courts are reluctant to
grant summary judgment on this issue.  See e.g., Candelario del
Moral v. UBS Fin. Servs., 669 F.3d 93, 100 (1st Cir. 2012) ("Breach
of duty – involving fluid concepts like reasonableness and
foreseeability – is usually an issue for a factfinder, meaning
summary judgment is generally an improper vehicle resolving
questions of this sort.") (internal citation and quotation
omitted).  Consequently, the Court **ADOPTS** the R&R's recommendation
concerning the defendants' purported failure to provide reasonable
accommodation.  (Docket No. 285.)  The cross-motions regarding
this determination are **DENIED**.  (Docket Nos. 242 and 243.)

### III. Conclusion

For the reasons set forth above, the R&R is **REJECTED IN PART** and **ADOPTED IN PART.** (Docket No. 285.) Accordingly, the motion for summary judgment filed by EEOC is **DENIED IN PART, GRANTED IN PART**, and **HELD IN ABEYANCE IN PART.** (Docket No. 242.) Furthermore, the motion for summary judgment filed by Triple-S is **DENIED IN PART** and **HELD IN ABEYANCE IN PART.** (Docket No. 243.)

Essentially, the Court **REJECTS** the R&R in relation to the first element of the failure-to-reassign cause of action (*i.e.* González is disabled as defined by the ADA). (Docket No. 285.) The Court **GRANTS** the EEOC's summary judgment motion with respect to this element. (Docket No. 242 at p. 1.) The summary judgment motion filed by Triple-S is **DENIED** with respect to this element. (Docket No. 243.)

The Court **REJECTS** the R&R in relation to the second and third elements of the reasonable accommodation cause of action (*i.e.* ability to perform the essential functions of the desired position and the existence of vacant positions). (Docket No. 285.) The motions for summary judgment regarding these elements are **HELD IN ABEYANCE.** (Docket Nos. 242 and 243.) The parties may simultaneously file briefs pertaining to the relevant statute of limitations and the implications of simultaneous charges before

Civil No. 21-1463 (FAB)                                                    36

the EEOC **no later than January 10, 2025.**  No responses will be allowed.

The Court **REJECTS** the R&R in relation to the notice requirement.  (Docket No. 285.)  The Court **GRANTS** the EEOC's summary judgment motion regarding this factual determination. (Docket No. 243.)  The summary judgment motion filed by Triple-S is **DENIED** regarding this factual determination.  (Docket No 243.)

Lastly, the Court **ADOPTS** the R&R in relation to the purported failure to provide reasonable accommodation.  (Docket No. 285.) The motions for summary judgment regarding this determination are **DENIED**.  (Docket Nos. 242 and 243.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 18, 2024.


                                    s/ Francisco A. Besosa
                                    FRANCISCO A. BESOSA
                                    SENIOR UNITED STATES DISTRICT JUDGE